UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNIDAD LATINA EN ACCIÓN and JUNTA FOR PROGRESSIVE ACTION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendant. | Civ. No. 3:07cv1224 (MRK) |

## RULING ON THE ADEQUACY OF DHS'S SEARCH

Following the submission of a Second Supplemental Declaration from Catrina Pavlik-Keenan in Support of the Department of Homeland Security's ("DHS") Motion for Summary Judgment [doc. # 19], the Court addresses the adequacy of DHS's search for documents responsive to Plaintiffs' request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* Plaintiffs dispute the adequacy of DHS's search as well as Ms. Pavlik-Keenan's declarations. As a consequence, they ask the Court to deny DHS's motion for summary judgment and to order depositions of knowledgeable agency employees regarding the distribution, replication, and storage of DHS records. This ruling is limited to issues regarding the adequacy of DHS's search and declarations. The Court previously ruled on certain documents that were submitted for *in camera* review, and the Court refers readers to that decision for background regarding Plaintiffs' FOIA request. *See Unidad Latina En Acción v. U.S. Dep't of Homeland Security*, 253 F.R.D. 44 (D. Conn. 2008). In later rulings, the Court will address DHS's continued assertion that certain records are exempt from disclosure under FOIA.

**I.**

Once again, the parties agree on the legal principles governing the Court's consideration of the adequacy of DHS's search and declarations. As was true previously, the disagreements arise in applying those legal principles to the facts of this case.

Thus, it is common ground that an agency responding to a FOIA request must make a good faith effort to conduct a search for requested records, using methods that are reasonably calculated to produce all relevant documents. *See, e.g., Truitt v. Dep't of State,* 897 F.2d 540, 542 (D.C. Cir. 1990); *Amnesty Int'l USA v. CIA*, No. 07 Civ. 5435 (LAP), 2008 WL 2519908, at * 9 (S.D.N.Y. June 19, 2008); *Moayedi v. U.S. Customs & Border Protection*, 510 F. Supp. 2d 73, 78 (D.D.C. 2007); *Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 368 (S.D.N.Y. 2002). That said, "a search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986); *see Amnesty Int'l, USA*, 2008 WL 2519908, at *9 ("Reasonableness does not demand perfection . . . .").

The issue is not whether any further responsive documents might conceivably exist but rather whether the agency's search for such documents was reasonably calculated to discover responsive documents. *See Amnesty In'tl*, 2008 WL 2519908, at * 9; *Moayedi*, 510 F. Supp. 2d at 79 (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). Therefore, the mere fact that an agency might later uncover some additional responsive documents does not necessarily mean that the agency's original search was inadequate. *See Grand Central P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) ("That some documents were not discovered until a second, more exhaustive, search was conducted does not warrant overturning the district court's [finding that the search was adequate].").

The burden of demonstrating that a FOIA search was adequate rests with the agency. *See Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). To satisfy that burden, the agency may submit a non-conclusory declaration that explains in reasonable detail the scope and method of the agency's search, as well as any justifications for non-disclosure. *Id.*; *see Grand Central P'ship,* 166 F.3d at 488-89; *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D. C. Cir. 1991). An agency need not submit a declaration from every employee who participated in the search; it is sufficient if the declaration is from the employee who supervised the search. *Carney*, 19 F.3d at 814.

A satisfactory agency declaration should provide reasonably detailed information about the type and manner of search performed, the structure of the agency's records system, the files likely to have relevant records, and the files searched, all of which would enable a FOIA requester to challenge the adequacy of the search and the court to rule on such a challenge. *See El Badrawi v. Dep't of Homeland Security*, --- F. Supp. 2d ---, 2008 WL 4480363, at *7 (D. Conn. Sept. 30, 2008); *Tarullo v. United States DOD*, 170 F. Supp.2d 271, 274-75 (D. Conn. 2001); *Katzman v. CIA*, 903 F. Supp. 434, 438 (E.D.N.Y. 1995). "A district court in a FOIA case may grant summary judgment in favor of an agency on the basis of agency affidavits if they contain *reasonable specificity* of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Grand Central P'ship*, 166 F.3d at 478 (citation and quotation marks omitted) (emphasis in original).

Declarations submitted by an agency are accorded a "presumption of good faith." *Carney*, 19 F.3d at 812. Therefore, if the agency's declarations are satisfactory on their face, discovery relating to the agency's search is unnecessary. *See id.* To justify discovery, the FOIA requester must "make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits

or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." *Id.* (citations omitted); *see Wood v. FBI*, 432 F.3d 78, 85 (2d Cir. 2005); *Hawthorn Mgmt. Servs., Inc. v. Dep't of Housing & Urban Dev.*, No. 03:96cv2435 (AHN), 1997 WL 821767, at * 3 (D. Conn. Dec. 18, 1997) (granting discovery upon a showing of bad faith). An agency declaration cannot be rebutted by "purely speculative claims about the existence and discoverability of other documents." *Safecard Servs., Inc.*, 926 F.2d at 1200 (quotation marks omitted); *see Grand Central P'ship*, 166 F.3d at 489; *Carney*, 19 F.3d at 813.

## II.

Before addressing Plaintiffs' specific concerns regarding the adequacy of DHS's search and Ms. Pavlik-Keenan's declarations, it will be useful for the Court to comment on the overall adequacy of Ms. Pavlik-Keenan's declarations, since DHS's attorney suggested at oral argument that Ms. Pavlik-Keenan's Second Supplemental Declaration was unnecessary. The Court disagrees. Ms. Pavlik-Keenan's original Declaration, dated March 20, 2008 [doc. # 19-3], was inadequate to allow for a meaningful assessment of the reasonableness of DHS's search. The explanation of DHS's search – which consumes a total of six of the twenty-five pages of Ms. Pavlik-Keenan's declaration – is neither "relatively detailed" nor "non-conclusory." *See El Badrawi*, --- F. Supp.2d ---, 2008 WL 4480363, at *14 (finding DHS's declarations inadequate). Indeed, most of the six pages is consumed with a description of the dates on which Plaintiffs' FOIA request was transmitted to various offices. Only about two pages of the declaration actually describe the records systems searched, and those descriptions are cursory and conclusory. The Court does not believe that a FOIA requester could knowledgeably challenge the search based on Ms. Pavlik-Keenan's first declaration; nor could a

court responsibly use that declaration to rule on the FOIA requester's challenge. *See id.*

Fortunately for the Court, DHS submitted a Second Supplemental Declaration dated September 25, 2008 [doc. # 36] from Ms. Pavlik-Keenan. Though Plaintiffs also criticize Ms. Pavlik-Keenan's Second Supplemental Declaration, the Court finds (with one exception noted below) that her second declaration is reasonably detailed, non-conclusory, and sufficient to satisfy DHS's obligation to demonstrate the adequacy of its search. The second declaration is 42 pages long, containing 139 separately numbered paragraphs, and by contrast to the first declaration, most of the second declaration is devoted to detailed descriptions of the records searched and the types of searches performed. Thus, the second declaration contains sufficient detail regarding which records were searched and which were not, with an explanation of why certain records systems were not searched. The second declaration also discusses which offices undertook the searches and why, the records systems at various relevant offices, and the searches undertaken at specific sites. In sum, the second declaration contains more than sufficient information to allow a FOIA requester to challenge the adequacy of the agency's search and a court to rule upon the requester's challenge. *See, e.g.*, *Sussman v. U.S. Dep't of Justice*, No. 03 Civ. 3618 (DRH), 2008 WL 2946006 (E.D.N.Y. July 29, 2008) (granting in part summary judgment on the basis of the agency's submission of more detailed declarations); *Amnesty Int'l USA*, 2008 WL 2519908, at * 9-11 (finding the Government's search adequate on the basis of its reasonably detailed declarations); *Radcliffe v. IRS*, 536 F. Supp. 2d 423, 432-34 (S.D.N.Y. 2008) (finding agency's search adequate on the basis of affiant's initial and reply declarations).

### III.

Plaintiffs raise several questions regarding Ms. Pavlik-Keenan's Second Supplemental

Declaration, and the Court will address each in turn.

First, Plaintiffs complain that Ms. Pavlik-Keenan does not have sufficient first-hand knowledge to submit the declaration. The Court disagrees. Ms. Pavlik-Keenan supervised the relevant searches, and there is no need for individuals from the various offices to submit their own declarations. *See Carney*, 19 F.3d at 814; *Safecard Servs., Inc.*, 926 F.2d at 1201; *Wood v. F.B.I.*, 312 F. Supp.2d 328, 340 (D. Conn. 2004), *aff'd in part and rev'd in part on other grounds*, 432 F.3d 78 (2d Cir. 2005).

Second, Plaintiffs raise a number of specific concerns about Ms. Pavlik-Kennan's second declaration. For example, they complain that some of the descriptions are too vague or contradictory. But the Court disagrees; Ms. Pavlik-Keenan's second declaration is very detailed and not conclusory in the least. Moreover, in its brief, DHS has provided the Court with satisfactory explanations for the concerns Plaintiffs raise. For example, Plaintiffs say that DHS failed to locate documents provided by the Connecticut Department of Public Safety ("DPS") or United States Postal Inspectors. But as DHS convincingly explains in its brief, the DPS documents fell outside of the scope of Plaintiffs' requests and DHS did locate the documents uncovered by the United States Postal Inspectors.

Third and most important, Plaintiffs' principal challenge to Ms. Pavlik-Keenan's declarations is based on their concern that certain documents were to have been created for the June 6, 2007 operation but these documents were not located during DHS's search. In particular, as DHS acknowledges, an Operational Order/Plan, *see* [doc. # 42-2] Ex. B, created before the June 6th operation states that a number of specific records would be created in connection with the operation. These documents include a pre-operational SPEAR Report, post-operational Significant Incident

6

Reports ("SIR") and post-A/S Notes, daily reports, and a SECTOR report.[1] *Id.* at 5, 7. For example, the Operational Order/Plan states that "[a] significant incident report will be prepared and forwarded via the SEN database pursuant to policy." *Id.* at 2. Curiously, however, none of the documents referenced in the Operational Order/Plan have been located or produced. While DHS labels Plaintiffs' concern about the existence of these documents "speculative," the agency's criticism is unfounded. DHS's own Operational Order/Plan called for the creation of these records. Plaintiffs are not speculating about that. DHS has not provided this Court or Plaintiffs with any explanation for why the agency decided to disregard its own Operational Order/Plan and not create the specified documents; nor is DHS required to provide such an explanation in the context of a FOIA request. However, DHS is required to ensure that it conducted a reasonable search for the documents that the agency's own records called for, and while for the most part, DHS has done so, the Court has one lingering concern that DHS must address.

Ms. Pavlik-Keenan's second declaration states that she is informed that the documents called for by the Operational Order/Plan were not created in connection with the June 6th operation. She goes on to state that had any of these documents been created, they would be maintained in the operational file of the Hartford Office of Detention and Removal Operations ("DRO") Supervisory Detention and Deportation Officer ("SDDO") and that no such documents were found in that file. Thus, paragraph 81 of the Second Supplemental Declaration states that "[n]o 'After action reviews

---

[1] Plaintiffs also complain that the pre-operational report states that Paula Grenier would be the media contact for the operation but that they were given none of Ms. Grenier's records. In Defendant's Reply to Plaintiffs' Response to Defendant's Second Supplemental Declaration in Support of Motion for Summary Judgment [doc. # 47], at 6 n.5, DHS explains that it did in fact search Ms. Grenier's records and many pages of her records were produced. Plaintiffs have not disputed DHS's representation.

and reports,' 'pre-operation SPEAR,' or 'Formal After Action Reports' were created in connection with the June 6th Operation [and] [i]f these documents were created [they] would be contained in the Operational File maintained by the SDDO within the Hartford DRO Office." *See* Second Supplemental Declaration [doc. #36] at 26, ¶ 81; *see also id.* 25, ¶ 77 ("The SDDO would have knowledge of after action report, post A/S note, and post operation SIR, as these documents would have been contained in the operation file for the June 6th Operation maintained by the SDDO. These documents do not exist as the SDDO has no knowledge that these documents were prepared and these documents were not contained in the operational file maintained by the SDDO."); *id.* at ¶ 78 ("SECTOR was not utilized for the June 6th Operation").

Ordinarily, the Court might find these representations sufficient to satisfy the agency's obligations, and they certainly go a long way to discharging the agency's burden. But in these particular circumstances – which include detailed pre-operational statements about which documents would be created to document the June 6th operation, none of which was located – the Court believes DHS must do somewhat more. As Plaintiffs point out, Ms. Pavlik-Keenan's declaration does not state *all* of the locations where the documents recited in the Operational Order/Plan would be kept if they had been created. She does say that the documents would be maintained in the Hartford DRO SDDO Operational File, that the file was searched, and that no such documents were found in that file. However, Ms. Pavlik-Keenan does not state whether these documents would also be maintained in other files, or in other offices, and whether those files were searched as well (or whether a search of those files would be unduly burdensome in some way).[2] After all, "the

---

[2] At oral argument, Plaintiffs suggested that a post-A/S note was among the documents produced, and if that were true, it would certainly suggest that some of the documents referenced in the Operational Order/Plan were in fact created, contrary to Ms. Pavlik-Keenan's representations.

8

adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *See, e.g., Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

Of course, as the Court previously noted, an agency ordinarily is not required to search every possible record system for every conceivable document responsive to a request. *See, e.g., Safecard Servs., Inc.*, 926 F.2d at 1201 ("The SEC's failure to make hopeless and wasteful efforts to locate copies that would never have been created in the normal course is not a ground for reversal of the district court."). But the circumstances presented here are not usual. For here, DHS's own Operational Order/Plan for the June 6th operation states that the agency planned to create a fair number of specific records to document the operation. Yet DHS says, without explanation, that none of the documents was ever created. True, the documents were not found in the file most likely to contain them – the Hartford DRO SDDO Operational File – and that fact goes a long way to satisfying the agency's burden. But as the D.C. Circuit noted in *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57 (D.C. Cir. 1990), an "agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested. It is not clear from [the agency's] affidavit that the Central Records system is the *only* possible place that responsive records are likely to be located. *At the very least, [the agency] was required to explain in its affidavit that no other record system was likely to produce responsive documents.*" *Id*. at 68 (emphasis added); *see also*

---

However, as DHS explained in a post-argument submission, the document referenced by Plaintiffs is not a post-A/S Note. *See* Status Report to Court [doc. # 59] ("[The document] identified by plaintiffs at the status conference as a Post A/S Note pursuant to the operation plan, is not such a note but instead is a briefing note to the assistant secretary regarding the complaint raised by the Mayor of New Haven in light of the operation conducted in New Haven on June 6, 2007."). Plaintiffs have not disputed DHS's representation.

*Morley v. CIA*, 508 F.3d 1108, 1121 (D.C. Cir. 2007); *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (noting an agency's obligation to "follow through on obvious leads to discover requested documents"); *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 369 (D.C. Cir. 1980). Ms. Pavlik-Keenan's second declaration does not satisfy that requirement.

While Plaintiffs seek a deposition to pursue the so-called missing documents, the Court does not believe that a deposition is necessary in these circumstances. This case is not like the *El Badrawi* case touted by Plaintiffs, and they have not shown any bad faith on DHS's part; nor do Plaintiffs have any firm information that the so-called missing documents were ever created. *Cf. El Badrawi*, --- F. Supp. 2d ----, 2008 WL 4480363, at *13-14. Indeed, Ms. Pavlik-Keenan says that the documents were not created, and her representations under oath are entitled to a presumption of good faith.

In these circumstances, therefore, the Court believes it will be sufficient for Ms. Pavlik-Keenan to submit a supplemental declaration that states in reasonable detail: (1) where else, if anywhere, besides the Hartford DRO SDDO Operational File would the documents referred to in the Operational Order/Plan be maintained, if they had been created; (2) that DHS looked in those locations for those documents; and (3) that none of the documents was found. It may well be that DHS has already done each of these tasks, but regrettably, Ms. Pavlik-Keenan's Second Supplemental Declaration does not say so. Moreover, it is certainly possible that the documents in question would be maintained *only* in the Hartford DRO SDDO Operational File and nowhere else, and if so, Ms. Pavlik-Keenan can simply say so. *See Moayedi*, 510 F. Supp.2d at 80 ("Here, the defendant states that the TECS is the '*only* database that would reasonably contain the information requested . . . .'"). However, her Second Supplemental Declaration fails to do so. Either way, once

Ms. Pavlik-Keenan submits a supplemental declaration along the lines suggested, the Court is prepared to grant DHS summary judgment regarding the adequacy of its search because, with this one exception, the Court believes that the agency has adequately addressed Plaintiffs' other concerns and demonstrated that it made a good faith effort to conduct a search for the requested records, using methods that are reasonably calculated to produce all relevant documents.

## IV.

DHS will have until January 6, 2009 to file the supplemental declaration required by this ruling. Plaintiffs will have until January 16, 2009 to file any response to the supplemental declaration.

IT IS SO ORDERED,

/s/     Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: **December 9, 2008**.